# 300015849

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



FILED-USDC-NDTX-DA
'25 JAN 15 PM4:38

| | | |
|---|---|---|
| BOBBY TORREZ AND DOROTHY TORREZ, | § § § | |
| *Plaintiffs,* | § § § | **3-25CV0106-X** |
| v. | § § | CIVIL ACTION NO. _____ |
| CITY OF IRVING, TEXAS, OFFICER J. BARRON, AND TWO OTHER UNKNOWN CITY OF IRVING POLICE OFFICERS | § § § § § | |
| *Defendants.* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

COME NOW, Plaintiffs BOBBY TORREZ and DOROTHY TORREZ, complaining of Defendants OFFICER J. BARRON, TWO OTHER UNKNOWN CITY OF IRVING POLICE OFFICERS, and the CITY OF IRVING, TEXAS and for causes of action will respectfully show unto the Court as follows:

## I.
## SUMMARY

1.1   It is well established that "a constitutional violation occurs when an officer tases, strikes, or violently tackles an arrestee who is not actively resisting arrest." *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018).

1.2   On January 15, 2023, Plaintiff BOBBY TORREZ was violently assaulted in the driveway of his residence by Defendants J. BARRON (Badge No. 1358) and other unknown police officers, who were employed by the City of Irving Police Department after Plaintiff BOBBY TORREZ pulled into his driveway during a traffic stop.

1.3    Plaintiff DOROTHY TORREZ, who is BOBBY TORREZ's sister, witnessed the assault.

1.4    Prior to the assault, BOBBY TORREZ was signaled to pull over by Defendant BARRON but did not immediately pull over because he was afraid of the police and thought that the police officers who were following him would be less likely to harm him if his sister, DOROTHY TORREZ, with whom he lived and was at their home, witnessed and recorded the traffic stop, so BOBBY TORREZ drove home at a slow rate of speed, followed by City of Irving Police Officers, and called his sister and asked her to come outside and record the traffic stop.

1.5    When BOBBY TORREZ arrived at his home, he parked his car in his driveway, stepped out of his vehicle, and was almost immediately tased by Defendant BARRON and another police officer employed by the CITY OF IRVING, tackled to the ground by Defendant BARRON and another officer, and then severely beaten by the Defendant BARRON and two other police officers employed by the CITY OF IRVING.

1.6    As a result of the beating inflicted upon him by the Defendants, BOBBY TORREZ suffered several facial fractures, including fractures of his orbital bone, nose, and jaw, as well as an injury to his eye, and scratches and bruises on his face, forehead, mouth, chest, arms, hands, legs, and back.

1.7    A CT scan of BOBBY TORREZ's face taken the night of the incident, reveals that BOBBY TORREZ suffered "left orbital maxillary nasal and zygomatic omaxillary junction fractures" as well as a "right maxillary antral fracture at the anterior antronasal junction".

1.8    Defendants' use of force was unnecessary and excessive since BOBBY TORREZ posed no danger or threat to any of the Defendant police officers immediately before they tased him and tackled him nor afterwards when he had fallen to the ground and they viciously beat him.

1.9    BOBBY TORREZ never raised his voice nor made any verbal threats to the Defendant

police officers, was not holding a weapon, and made no aggressive or threatening moves towards the Defendant police officers.

1.10    BOBBY TORREZ now files this lawsuit against Defendants, for violating his constitutional rights under the Fourth Amendment to the United States Constitution to be free from excessive force and false arrest.

1.11    DOROTHY TORREZ also asserts a bystander cause of action against the Defendants as a result of witnessing the beating inflicted upon her brother by the Defendants.

## II.
## PARTIES

2.1    Plaintiff BOBBY TORREZis a resident of Dallas County, Texas.

2.2    Plaintiff DOROTHY TORREZis a resident of Dallas County, Texas.

2.3    Defendant J. BARRON (Badge No. 1358) is an individual residing in Dallas County, Texas, and at all times relevant to this lawsuit was a police officer employed by the City of Irving Police Department and may be served at his current place of employment at the City of Irving Police Department located at 305 N. O'Connor Rd., Irving, Texas 75061, or wherever he may be found. This Defendant is being sued in his individual capacity. Issuance of a citation for service upon this Defendant by a private process server is requested at this time.

2.4    Defendant CITY OF IRVING, TEXAS is a government entity which may be served through its City Secretary, Shanae Jennings, at 825 W. Irving Blvd., Irving, TX 75060 or wherever she may be found. Issuance of a citation for service upon this Defendant by a private process server is requested at this time.

## III.
## JURISDICTION AND VENUE

3.1    The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and §

1343 since Plaintiffs are suing for relief under 42 U.S.C. § 1983.

3.2     Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants reside in the Northern District of Texas and the cause of action accrued in the Northern District of Texas.

## IV.
## FACTS AND ALLEGATIONS

4.1     On January 15, 2023, Plaintiff BOBBY TORREZ was violently assaulted in the driveway of his residence by Defendants J. Barron (Badge No. 1358) and other unknown police officers, who were employed by the City of Irving Police Department after Plaintiff BOBBY TORREZ pulled into his driveway during a traffic stop.

4.2     Plaintiff DOROTHY TORREZ, who is BOBBY TORREZ's sister, witnessed the assault.

4.3     Prior to the assault, BOBBY TORREZ was signaled to pull over by Defendant BARRON but did not immediately pull over because he was afraid of the police and thought that the police officers who were following him would be less likely to harm him if his sister, DOROTHY TORREZ, with whom he lived and was at their home, witnessed and recorded the traffic stop, so BOBBY TORREZ drove home at a slow rate of speed, followed by City of Irving Police Officers, and called his sister and asked her to come outside and record the traffic stop.

4.4     When BOBBY TORREZ arrived at his home, he parked his car in his driveway, stepped out of his vehicle, and was almost immediately tased by Defendant BARRON and another police officer employed by the CITY OF IRVING, tackled to the ground by Defendant BARRON and another officer, and then severely beaten by the Defendant BARRON and two other police officers employed by the CITY OF IRVING.

4.5     As a result of the beating inflicted upon him by the Defendants, BOBBY TORREZ suffered several  facial fractures, including fractures of his orbital bone, nose, and jaw, as well as

PLAINTIFFS' ORIGINAL COMPLAINT                                              PAGE 4

an injury to his eye, and scratches and bruises on his face, forehead, mouth, chest, arms, hands, legs, and back.

4.6     A CT scan of BOBBY TORREZ's face taken the night of the incident, reveals that BOBBY TORREZ suffered "left orbital maxillary nasal and zygomatic omaxillary junction fractures" as well as a "right maxillary antral fracture at the anterior antronasal junction".

4.7     Defendants' use of force was unnecessary and excessive since BOBBY TORREZ posed no danger or threat to any of the Defendant police officers immediately before they tased him and tackled him nor afterwards when he had fallen to the ground and they viciously beat him.

4.8     BOBBY TORREZ never raised his voice nor made any verbal threats to the Defendant police officers, was not holding a weapon, and made no aggressive or threatening moves towards the Defendant police officers.

4.9     BOBBY TORREZ now files this lawsuit against Defendants, for violating his constitutional rights under the Fourth Amendment to the United States Constitution to be free from excessive force and false arrest.

4.10    DOROTHY TORREZ also asserts a bystander cause of action against the Defendants as a result of witnessing the beating inflicted upon her brother by the Defendants.

4.11    These injuries were directly and proximately caused by Defendants' intentionally tasing BOBBY TORREZ, thereby knocking him to the ground, and then viciously beating him and were not caused by any other means.

## V.
## CAUSES OF ACTION

**Count One**
**Excessive Use of Force**
**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Defendants**

5.1     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

5.2     Acting under the color of law, Defendants deprived BOBBY TORREZ of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution by way of the Fourteenth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

5.3     Plaintiffs bring this cause of action pursuant to 42 U.S.C. § 1983.

5.4     The amount of force used by Defendants against BOBBY TORREZ as described above, specifically but not limited to, when Defendants tased BOBBY TORREZ, while Mr. TORREZ was standing still and compliant with Defendants' commands, was not resisting arrest, and not threatening anyone, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Mr. TORREZ.

5.5     A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

5.6     A constitutional violation occurs when an officer tases, strikes, or violently tackles an arrestee who is not actively resisting arrest. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018) (emphasis added).

5.7     The Fifth Circuit recently held that, "it may be objectively reasonable under certain circumstances for police officers to use physical force when a person refuses to comply with an officer's lawful commands—but not after that person has begun to comply." *Bagley v. Guillen,* 90 F.4th at 800. According to the Court,

> "At the time of the conduct in question, it was clearly established that an officer may not use force on a suspect who is complying with his commands. *See, e.g.,*

*Darden v. City of Fort Worth*, 880 F.3d 722, 728–30 (5th Cir. 2018); *Newman v. Guedry*, 703 F.3d 757, 761–64 (5th Cir. 2012) (objectively unreasonable for officers to injure a man whose "behavior [does] not rise to the level of active resistance") (internal quotation mark omitted); *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 342 (5th Cir. 2020)). ("Officers engage in excessive force when they physically strike a suspect who is not resisting arrest."). As we have long held, "[c]laims of excessive force are fact-intensive" and "depend[ ] on the facts and circumstances of each particular case." *Newman*, 703 F.3d at 761. "[R]elevant considerations include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." *Id.* (cleaned up).

*Bagley*, 90 F.4th at 803.

5.8    The Court continued,

"Naturally, officers may use force in ways "that corresponded to [a suspect's] escalating verbal and physical resistance." *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012). But where a suspect initially resists, force "must be reduced once [he] has been subdued." *Joseph*, 981 F.3d at 335. Once a suspect is "subdued" and "no longer resisting, an officer's subsequent use of force is excessive." *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015). *See also Joseph*, 981 F.3d at 341 ("continuing to inflict force despite [a suspect] committing no crime, posing no threat, and giving no active resistance" violates clearly established law); *Newman,* 703 F.3d at 764 n.8 (officer "should have known that he could not continue to shock the suspect with the taser after he was no longer resisting arrest") (cleaned up). An officer cannot use force against a citizen who has "committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command." *Newman*, 703 F.3d at 762, 764.

*Id.*

5.9    Here, immediately before the Defendants tased Mr. TORREZ and tackled him to the ground and then viciously beat him, Mr. TORREZ was complying with Defendant's command to raise his hands and step forward.  Mr. TORREZ never made any threatening statements, never made any threatening gestures or postures toward anyone, never raised his voice, and was not holding a weapon; accordingly, the Defendants' use of force was excessive. *See Bagley,* 90 F.4th at 803*; Joseph,* 981 F.3d at 335; *Darden*, 880 F.3d at 731; *Carroll*, 800 F.3d at 177; *Newman*,

703 F.3d at 762, 764.

5.10    The speed with which an officer resorts to force, *Trammell*, 868 F.3d at 342, and the failure of the officer "to use physical skill, negotiation, or even commands" before applying such force, *Newman*, 703 F.3d at 762, weigh in favor of finding that the use of force was excessive to the need. *Pena v. City of Rio Grande City, Texas*, 816 F. App'x 966, 973 (5th Cir. 2020).

5.11    The Fifth Circuit has several times found that the speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need. *Trammell*, 868 F.3d at 342; *See Newman*, 703 F.3d at 763 (holding that disputes of fact were material because "a reasonable jury could find that the degree of force used was not justified where the officer 'engaged in very little, if any, negotiation' with the suspect and 'instead quickly resorted to' " force); *Deville*, 567 F.3d at 168 (determining that "[a] reasonable jury could infer from [the plaintiff's] deposition testimony that [the defendant officer] engaged in very little, if any, negotiation with [the plaintiff]—and find that he instead quickly resorted to breaking her driver's side window and dragging her out of the vehicle").

5.12    In *Trammell*, the Fifth Circuit found that "given that **only three seconds elapsed** between Officer Fruge's initial request that Trammel place his hands behind his back and when Officers Fruge, Garza, and Neveu tackled Trammel, we find that a reasonable jury could infer that the officers used very little, if any, negotiation before resorting to physical violence, and that the officers' conduct did not constitute the required "measured and ascending" actions calibrated to Trammel's conduct." (emphasis added) *Trammell*, 868 F.3d at 342.

5.13    Here, the Defendants tased and tackled Mr. TORREZ as he was complying with their instructions to raise his hands and step towards them and proceeded to viciously beat him as he ay defenseless on the ground.

5.14    At no time did Mr. TORREZ fight back.

5.15    Similarly to *Trammell*, where the officers tackled the plaintiff after only **three seconds** of giving him a command, the Defendant police officers tased and then tackled Mr. TORREZ to the ground as he was complying with their instructions. *Trammell*, 868 F.3d at 342. In this case, the Defendant police officers proceeded to violently pummel Mr. Torrez as he lay on the ground.

5.16    As in *Trammell*, where the Fifth Circuit found that a jury could determine that using force after only **three seconds** was unreasonable, a jury could find that tasing and tackling Mr. TORREZ as he was complying with their instructions and then beating him was unreasonable and an excessive use of force. *Id*.

5.17    When the Defendants tased and tackled Mr. TORREZ to the ground, Mr. TORREZ was not evading arrest as he was complying with the officers commands to raise his hands and step towards them, and the Defendants then proceeded to viciously beat Mr. TORREZ as he lay on the ground.

5.18    When the Defendants tased and tackled Mr. TORREZ to the ground and proceeded to beat him, Mr. TORREZ was not a danger or threat to any of the Defendants nor to any other person, as Mr. TORREZ never raised his voice nor made any verbal threats toward any of the Defendants or any other person, was not holding a weapon and was calmly complying with the Defendants' instructions.

5.19    Here, there was less resistance than was even found in *Trammel*, as Mr. TORREZ did not even attempt to pull away from the Defendants prior to Defendants tasing him and tackling him to the ground even though Mr. TORREZ was complaint with Defendansts' orders to raise his hands and step towards them. *Trammel*, 868 F.3d at 331.

5.20    BOBBY TORREZ's sister, DOROTHY TORREZ observed the above-described

incident.

5.21    A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with citizens such as Mr. TORREZ who was not threatening any officer or other person, was not attempting to flee, was not resisting arrest, and that tasing, tackling to the ground, and beating Mr. TORREZ was not warranted.

5.22    As a direct result of the force used against him by the Defendants, Mr. TORREZ suffered physical injury, pain, and mental anguish, outlined in this lawsuit, for which he sues herein.

5.23    As a result of the beating inflicted upon him by the Defendants, BOBBY TORREZ suffered several facial fractures, including fractures of his orbital bone, nose, and jaw, as well as an injury to his eye, and scratches and bruises on his face, forehead, mouth, chest, arms, hands, legs, and back.

5.24    A CT scan of BOBBY TORREZ's face taken the night of the incident, reveals that BOBBY TORREZ suffered "left orbital maxillary nasal and zygomatic omaxillary junction fractures" as well as a "right maxillary antral fracture at the anterior antronasal junction".

5.25    Mr. TORREZ's injuries were directly and proximately caused by Defendants intentionally tackling Mr. TORREZ to the ground and then beating him and were not caused by any other means.

5.26    The Defendants were acting under color of law.

5.27    As a result of the Defendants' actions, Defendants deprived Mr. TORREZ of his civil, constitutional, and statutory rights and are liable to Mr. TORREZ pursuant to 42 U.S.C. § 1983.

5.28    As a result of the Defendants' actions, Mr. TORREZ suffered personal injuries, incurred medical bills, was temporarily physically disfigured, suffered physical impairment, pain and suffering and mental anguish, and emotional distress for which he is entitled to and seeks

compensation from the Defendants.

5.29    As a result of Defendant's actions, Mr. TORREZ has been forced to retain counsel to prosecute this action and also seeks recovery of his reasonable and necessary attorneys' fees through trial and all appeals pursuant to 42 U.S.C. § 1988.

5.8    All conditions precedent to Plaintiff BOBBY TORREZ's right to recover his damages on his civil rights claim claims against Defendants have been performed or have occurred.

## VI.

## Count Two

## DOROTHY TORREZ's Civil Rights and Bystander Claims

6.1    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully incorporated herein.

6.2    Plaintiff DOROTHY TORREZ hereby asserts a bystander claim against the Defendants because she witnessed and was in close proximity to Plaintiff BOBBY TORREZ when the Defendants violated BOBBY TORREZ's constitutional rights and injured him under color of law.

6.3    As a result of the Defendants' actions, Defendants deprived DOROTHY TORREZ of her civil, constitutional, and statutory rights and are liable to DOROTHY TORREZ pursuant to 42 U.S.C. § 1983.

6.4    As a result of the Defendants' actions, DOROTHY TORREZ suffered mental anguish and emotional distress for which she is entitled to and seeks compensation from the Defendants.

6.5    As a result of Defendant's actions, DOROTHY TORREZ has been forced to retain counsel to prosecute this action and also seeks recovery of her reasonable and necessary attorneys' fees through trial and all appeals pursuant to 42 U.S.C. § 1988.

6.6    All conditions precedent to Plaintiff DOROTHY TORREZ's right to recover damages on

PLAINTIFFS' ORIGINAL COMPLAINT                                                    PAGE 11

her civil rights and bystander claims against Defendants have been performed or have occurred.

## VII.

## Count Three

### Negligent Training and/or Supervision by the CITY OF IRVING

7.1    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully incorporated herein.

7.2    Plaintiffs further assert that the incident giving rise to this lawsuit and the violations of Plaintiffs' constitutional rights alleged above were proximately caused by the CITY OF IRVING's negligent training and/or supervision of Defendant BARRON and/or the other two police officers who injured BOBBY TORREZ and caused BOBBY TORREZ and DOROTHY TORREZ to suffer damages as described above, which they are entitled and seek to recover from the CITY OF IRVING.

7.3    All conditions precedent to Plaintiffs' right to recover damages on their negligent training and/or supervision claims against Defendant CITY OF IRVING have been performed or have occurred.

7.4    Furthermore, the negligent training and supervision alleged herein further resulted in a violation of Plaintiffs constitutional rights under color of state law under 42 U.S.C. § 1983.

7.5    As a result of the Defendant CITY OF IRVING's actions BOBBY TORREZ suffered personal injuries, incurred medical bills, was temporarily physically disfigured, suffered physical impairment, pain and suffering and mental anguish, and emotional distress for which he is entitled to and seeks compensation from the Defendants.

DOROTHY TORREZ suffered mental anguish and emotional distress for which she is entitled to and seeks compensation from the Defendants.

7.6    As a result of the Defendant CITY OF IRVING's actions BOBBY TORREZ has been

forced to retain counsel to prosecute this action and also seeks recovery of her reasonable and necessary attorneys' fees through trial and all appeals pursuant to 42 U.S.C. § 1988.

7.7     As a result of the Defendant CITY OF IRVING's actions DOROTHY TORREZ has been forced to retain counsel to prosecute this action and also seeks recovery of her reasonable and necessary attorneys' fees through trial and all appeals pursuant to 42 U.S.C. § 1988.

## VIII.
## PUNITIVE DAMAGES

8.1     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

8.2     When viewed objectively from the standpoint of the Defendants at the time of the occurrence, Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

8.3     As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendants which was recklessly or callously indifferent to BOBBY TORREZ's and DOROTHY TORREZ's constitutionally protected rights, Plaintiffs are entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## IX.
## ATTORNEY'S FEES

9.1     If Plaintiffs prevail in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## X.
## JURY REQUEST

10.1     Plaintiffs respectfully request a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs BOBBY TORREZ and DOROTHY TORREZ pray that judgment be rendered against Defendants J. BARRON, TWO OTHER UNKNOWN CITY OF IRVING POLICE OFFICERS, and the CITY OF IRVING, TEXAS in an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

By:    /s/ Baltasar D. Cruz
Baltasar D. Cruz
Texas Bar No. 05196150
Baltasar D. Cruz, P.C.
2929 Carlisle St., Suite 115
Dallas, Texas  75360
Telephone: (214) 522-4900
Telecopier: (732) 875-0792
email: BaltasarDCruz@aol.com

ATTORNEY FOR PLAINTIFFS
BOBBY TORREZ and
DOROTHY TORREZ